UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**F I L E D**
APR 2 7 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-264-GWU

TRICIA MILLS,             PLAINTIFF,

VS.          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Mills

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

Mills

reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

5

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Tricia Mills, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of headaches responsive to medication, a history of atypical pseudoseizures, and a "dysthymic disorder, early onset with partner relational problems and dependent personality traits." (Tr. 22). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to return to her past relevant work as a waitress and cashier and, therefore, was not entitled to benefits. (Tr. 23-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she had no exertional restrictions, but would have the following non-exertional impairments. (Tr. 460). She: (1) would be limited to low stress work that did not require her to be around hazards or dangerous settings; (2) could not climb, work at heights, or operate moving equipment; (3) would require work that accommodated moderate limitations in her ability to respond appropriately to changes in the routine work setting, to set realistic goals or make plans independently of others, respond

7

appropriately to changes in the work setting, perform at a consistent pace and complete a normal workday and workweek without interruptions from psychologically-based symptoms, and could understand, remember, and carry out detailed instructions. (Id.). The VE responded that with these restrictions, the plaintiff could perform her past relevant work as a waitress and as a cashier. (Id.). In the alternative, the ALJ read the narrative restrictions of psychological examiner Gary Maryman, which stated that the plaintiff most likely had sufficient intellectual ability to carry out simple to perhaps slightly more complicated instructions and tasks, should have sufficient focus and concentration to complete and carry out simple and repetitive work assignments, could persist at problems on tasks that require good concentration and focus in order to perform at good levels, should have the ability to interact appropriately with co-workers and supervisors but may be somewhat more limited in dealing with the general public, most likely had the ability to adjust and adapt reasonably well to stressors and pressures associated with a medium to lower stress work environment, but may be somewhat more restricted in a more fast-paced and high-pressure work atmosphere. (Tr. 461). The VE responded that the jobs of waitress and cashier would still be available with these restrictions. (Id.).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

8

Mills

Although the plaintiff alleged disability due to depression, leg and chest pain, headaches, seizures, and an inability to walk long distances or be around crowds of people, no treating, examining, or reviewing source indicated the presence of very severe physical limitations. The plaintiff's treating family physician, Dr. Charles Stargel, saw her on several occasions after the alleged onset date of April 30, 2001, primarily for complaints of seizures and headaches. He prescribed the drug Zomig and obtained a CT scan of the head, which was negative. (Tr. 143-4). Her neurology examination was grossly normal, and Dr. Stargel noted that a neurologist to whom he had referred his patient felt that her "seizures" were atypical, and suggested a diagnosis of "pseudo-seizure." (Tr. 143). The plaintiff was seen again a few weeks later with an "atypical" passing out episode, at which time it appeared that she had not been in compliance with her anti-convulsant medication Depakote, and was smoking marijuana almost every day in addition to being a fairly heavy drinker. (Tr. 142). The physician noted that the plaintiff smelled of alcohol. (Id.). He wrote that it now appeared her pseudo-seizure activity could be related to drug withdrawal, and that the patient was also giving some history of Xanax and Lorcet use from her husband's prescriptions. (Id.).[1] He suggested clarifying the situation with a neurologist.

---

[1] As per Pub. L. No. 104-121 §105(a)(1), substance abuse is not an eligible source of disability.

9

Mills

Dr. Thadis Cox conducted a consultative examination of Mrs. Mills on January 5, 2002. She complained of chronic headaches, depression, and chest pain, and described one episode of seizure activity two months ago. (Tr. 138). She been placed on Zoloft two months ago for depression, but there had been no change in her mood. She asserted that she had stopped using alcohol. (Tr. 139).[2] Dr. Cox's examination was essentially normal, and he found no physical evidence for significant restrictions. (Tr. 139-40).

Two non-examining state agency physicians reviewed a portion of the record. One of the reviewers found no evidence of a medically determinable physical impairment. (Tr. 177). The other concluded that the plaintiff's only physical restrictions should be "never" climbing, and avoiding all exposure to hazards such as machinery and heights. (Tr. 167-76). These were the restrictions accepted by the ALJ and put to the VE in the first hypothetical question. No greater restrictions are established by the evidence.

As far as her mental status was concerned, the plaintiff was evaluated by Dr. Gary Maryman in January, 2002. (Tr. 133). She complained of being nervous in crowds and of having had a nervous breakdown several months ago that did not require hospitalization, but she had begun mental health counseling three months earlier, and fairly recently had been placed on hydroxyzine and Zoloft. (Id.). She

---

[2]This was approximately six weeks before the emergency room admission at which Dr. Stargel smelled alcohol. (Tr. 142).

10

described distress because her brother had murdered their mother in 1998 and it continued to affect her. (Id.). Dr. Maryman saw no sign of any significant emotional distress, although the plaintiff did seem tired, slow-moving, lethargic, and had a depressed mood and affect. (Tr. 134). However, she related well, and a good part of her distress appeared to relate to a three-month old marriage to a disabled man. She admitted that she been arrested once for DUI and a couple of times for public intoxication, but alleged to have stopped drinking altogether four years ago. (Tr. 136). Dr. Maryman's impression was a dysthymic disorder, early onset, "partner relational problem," and dependent personality traits, with a Global Assessment of Functioning (GAF) Score of 58. A GAF score of 58 reflects moderate impairments. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Dr. Maryman gave the narrative account of the plaintiff's psychological restrictions as outlined in the ALJ's second hypothetical question, supra.

Records from the Comprehensive Care Center (CCC) show that the plaintiff made similar complaints to sources at the mental health clinic, stating that she had nightmares about her mother's death, that she was under stress and her current husband was sick, and she worried about everything. (Tr. 151-2). She admitted drinking six beers twice a week to relax, and had used cocaine and marijuana in the past. (Tr. 152). She stated that she had been a "bad alcoholic." (Id.). The staff psychiatrist diagnosed a dysthymic disorder, generalized anxiety disorder, and "rule

11

out" alcohol abuse, and recommended, in addition to taking Zoloft, increasing activities. (Id.). The plaintiff did not report improvement upon returning (Tr. 148) and, by December, 2002, was admitted to the Appalachian Regional Hospital (ARH) for a psychiatric hospitalization after trying to cut her wrists. (Tr. 342). The immediate cause of doing so was disruption in her second marriage. (Tr. 342-3). She reported that her "seizures" had happened only on two occasions and the last one was in the summer of 2002. (Tr. 343). Her physical examination showed that she was able to stand on one foot, and walk on her heels and toes normally, there were no abnormalities in gait, posture, or balance, there was no demonstrable sensory loss, and reflexes were equal. (Tr. 344). However, urine drug screening was positive for marijuana. (Tr. 355). Other tests during hospitalization included a normal CT scan of the head (Tr. 236, 239, 241), and blood tests showed that she had a below therapeutic level of Lithium (which had been prescribed at the CCC) and valproic acid (i.d., Depakene). (Tr. 237, 242). The plaintiff was discharged after four days with a diagnosis of "bipolar, manic vs. depressive," and given a GAF of 70 (Tr. 229), which reflects only transient impairments as per the DSM-IV-TR, p. 34. The plaintiff continued treatment at the CCC and was given medication, such as Risperdal along with Lithobid, but she continued to complain of some situational factors as well as a problem with headaches. (Tr. 410-11). However, no additional functional restrictions were suggested.

12

Mills

James Leisenring, a psychologist, consultatively examined the plaintiff in June, 2003, at which time she complained of physical problems and mixed anxiety and depression. (Tr. 219). She reportedly was "trying" to quit drinking and reported that she had maintained sobriety for "three weeks." (Id.). Her husband was also present at the interview, however, and said that alcohol was a current problem. (Id.). Mr. Leisenring attempted to administer IQ and performance testing, but concluded that the results were not valid due to poor effort. (Tr. 218, 219-20). His impression was of a dysthymic disorder, anxiety disorder, and alcohol dependence, with estimated borderline intellectual functioning to low average intelligence. (Tr. 221). He assigned a GAF of only 50, and opined that the plaintiff would have no useful ability to deal with work stresses and would have a seriously limited but not precluded ability to deal with the public and behave in an emotionally stable manner. (Tr. 221-4).

The ALJ rejected Mr. Leisenring's conclusions and chose to give greater weight to Dr. Maryman, on the grounds that the plaintiff was apparently drinking at the time of the Leisenring examination. (Tr. 21). Moreover, there were no functional impairments listed at the time of her CCC intake examination, and when released from the ARH psychiatric hospitalization in December, 2002 she had been given a GAF of 70. (Tr. 21-2). The ALJ also criticized Mr. Leisenring's report for stating that he "speculated" about certain restrictions. These reasons provide substantial evidence for supporting the ALJ's conclusions regarding mental functioning.

13

Mills

The plaintiff raises several arguments on appeal, maintaining that the ALJ did not properly evaluate her impairments in combination, but a review of the administrative decision shows that the ALJ's discussion was adequate in this regard. Gooch v. Secretary of Health and Human Services, 833 F.2d 589 (6th Cir. 1987). The plaintiff also argues that the plaintiff was mildly mentally retarded based on the scores obtained by Mr. Leisenring, but does not address the fact that these were considered to be invalid by the psychologist. No other testing is available. The plaintiff finally argues that it would be impossible to perform the plaintiff's past job as waitress or cashier if an individual was precluded from working under stressful situations, but provides no vocational or other evidence to support this assertion.

The decision will be affirmed.

This the __27__ day of April, 2005.

G. WIX UNTHANK
SENIOR JUDGE

14